IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**EDWARD EUGENE DONNAL,**     Case No. 3:15 CV 1550

    Plaintiff,

    v.     Magistrate Judge James R. Knepp, II

**DR. CARLOS PEREZ, et al.,**

    Defendants.     MEMORANDUM OPINION AND ORDER

**INTRODUCTION**

On August 7, 2015, Plaintiff Edward Eugene Donnal ("Plaintiff") filed a Complaint against various parties,[1] all of whom have been terminated except remaining Defendant Dr. Ronak H. Patel, M.D. ("Defendant"), alleging violations of 42 U.S.C. § 1983. (Doc. 1). On April 14, 2016, Plaintiff filed an Amended Complaint. (Doc. 28).[2] On July 11, 2016, the Court granted Plaintiff's request for appointment of counsel and appointed Attorney F. Stephen Chamberlain. (Doc. 43). Jurisdiction is proper under 28 U.S.C. § 1331. The parties consented to the undersigned's exercise of jurisdiction in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 21). Pending before the Court is Defendant's Motion for Summary Judgment (Doc. 53), to which Plaintiff filed opposition (Doc. 61), and Defendant filed a reply (Doc. 63). For the reasons stated below,

---

1. In addition to Defendant, initial Defendants included Dr. Carlos Perez, Kristin Edwards, HCA, RN, Nurse Amy Pederson, Joann Factor, Institutional Inspector (a.k.a. Jodie Factor). These parties were dismissed on November 30, 2015, pursuant to 28 U.S.C. § 1915(e). *See* Doc. 5.
2. The Court later denied Plaintiff's request to amend the complaint to reinstate Nurse Pederson. (Doc. 42).

Defendant's Motion for Summary Judgment (Doc. 53) is granted in its entirety and the case is dismissed with prejudice.

## BACKGROUND

At all times relevant to this case, Plaintiff was in the custody of the Ohio Department of Rehabilitation and Corrections, as an inmate at the Allen/Oakwood Correctional Institution ("AOCI"). (Doc. 28, at 2). Defendant worked as a contractor of AOCI and provided medical treatment to inmates at the facility. (Defendant's Declaration, Doc. 53-1, at 1). On February 19, 2014, Plaintiff had a 9:00 or 9:30 a.m. scheduled appointment at the AOCI infirmary with Dr. Perez for medical treatment. (Plaintiff's Affidavit, Doc. 61-1, at 2). He waited at the infirmary, "[e]xcept for lunch", until he was seen at 3:45 p.m. by Defendant, rather than Dr. Perez, who had left for the day. *Id.*

Plaintiff complained of shortness of breath from walking, which he described as "panting and gasping for breath", and "slight" chest pains. *Id.* Plaintiff told Defendant he had a family history of blood clots, as his father had a pulmonary embolism and his twin brother had deep vein thrombosis. *Id.* He added other inmates told him he looked pale and had black rings around his eyes. *Id.* at 3. Plaintiff reported he had difficulty breathing while lying down. *Id.*

A physical examination revealed Plaintiff did not have swelling in his extremities, fever, chills, or respiratory distress. (Doc. 51-1, at 2). His lungs sounded clear and his heart had a regular rate and rhythm. *Id.* Plaintiff's eyes, ears, nose, and throat were normal. *Id.*[3] Defendant noted Plaintiff was a former smoker, overweight, and had a slightly elevated blood pressure and pulse.

---

3. Plaintiff does not appear to dispute Defendant's summarization of the results of the physical examination.

(Defendant's Declaration, Doc. 53-1, at 2). Defendant ordered a chest x-ray and blood work. *Id.* Plaintiff spent five to six minutes with Defendant. *Id.*

Plaintiff had a chest x-ray taken a few days later, on February 21, 2014.[4] (Plaintiff's Affidavit, Doc. 61-1, at 3). He was taken to St. Rita's Medical Center on February 25, 2014. (Doc. 53-1, at 3). The blood tests were not completed at AOCI. (Plaintiff's Affidavit, Doc. 61-1, at 3; Defendant's Declaration, Doc. 53-1, at 3). Plaintiff was then hospitalized for seven days, and eventually diagnosed with bilateral pulmonary embolism. (Plaintiff's Affidavit, Doc. 61-1, at 3).

### MOTION FOR SUMMARY JUDGMENT STANDARD OF REVIEW

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. Further, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to

---

4. Registered Nurse Lisa Peterson stated Plaintiff underwent the chest x-ray a day prior, on February 20, 2014. (Nurse Petersen's Affidavit, Doc. 53-2, at 2).

create a genuine issue of material fact. *See* Fed R. Civ. P. 56(c)(3) (noting that the court "need consider only the cited materials").

**DISCUSSION**

Defendant makes three arguments in support of summary judgment: (1) Plaintiff's official capacity claims are barred by the Eleventh Amendment; (2) the facts do not support a medical deliberate indifference claim; and (3) he is entitled to qualified immunity. (Doc. 53, at 9-17). Plaintiff responds there is a genuine issue of material fact regarding the medical history; specifically, what occurred at the February 19, 2014 appointment. (Doc. 61, at 5-6). He admits he has been unable to secure a medical expert at this time and, therefore, requests the Court apply Civil Rule 56(d) and permit additional discovery before ruling on the motion for summary judgment. *Id.* at 6.

<u>Official Capacity Claims</u>

Defendant first argues any claims against him in his official capacity as a doctor for the state are barred by the Eleventh Amendment. (Doc. 53, at 9-10) (citing Amended Complaint, Doc. 28-1 ("sue[] [Defendant] in his Individual and Official Capacity")). Plaintiff does not address this argument in his opposition and, regardless, the undersigned agrees with Defendant.

The Eleventh Amendment states: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of a Foreign State." U.S. Const. amend. XI. It is not applicable in two circumstances: "1) where a state has itself waived its immunity from federal suit; and 2) where Congress has abrogated the states' immunity." *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993). Ohio has not waived immunity, *see Mackey v. Cleveland State Univ.*, 837 F. Supp. 1396, 1403 (N.D.

Ohio 1993), and Congress did not abrogate immunity when it passed 42 U.S.C. § 1983, the section under which this case brought, *see Quern v. Jordan*, 440 U.S. 332, 345 (1979). Therefore, in Ohio, the Eleventh Amendment precludes claims, for both injunctive and monetary relief, against the state and its departments. *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 152 n.2 (6th Cir. 1995). Importantly, a suit against a state official in his official capacity is no different than a suit against a state. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

During the relevant time period in this case, Defendant was employed by AOCI. (Defendant's Declaration, Doc. 53-1, at 1). As such, the undersigned grants summary judgment with regard to any claims against Defendant in his official capacity.

Deliberate Indifference

Next, Defendant argues Plaintiff has failed to show he was deliberately indifferent to Plaintiff's medical needs and, even so, Defendant is entitled to qualified immunity. (Doc. 53, at 10-15). Plaintiff responds that Defendant ignored signs and symptoms during the appointment and, therefore, showed deliberate medical indifference. (Doc. 61, at 6-10).

"[D]eliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). To succeed on such a claim, a plaintiff must show: 1) he had a serious medical need; and 2) a defendant was aware of that need, and acted with deliberate indifference to it. *Id.* A plaintiff must show the defendants had a "sufficiently culpable state of mind," *Wilson v. Seiter,* 501 U.S. 294, 297 (1991), to deny or purposely delay medical care or intentionally interfere with prescribed medical treatment, *Estelle,* 429 U.S. at 104-05. There is an objective and a subjective component. Objectively, a plaintiff must show "the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.,* 390 F.3d 890, 899 (6th Cir. 2004). However, in the case of "minor maladies or

non-obvious complaints of a serious need for medical care," *id. at* 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment". *Napier v. Madison Cty., Ky.,* 238 F.3d 739, 742 (6th Cir.2001) (internal citation omitted). Subjectively, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary,* 273 F.3d 693, 703 (6th Cir. 2001). Importantly, to support a constitutional claim of deliberate indifference under the Eighth Amendment, a plaintiff must show more than mere negligence. *Farmer v. Brennan,* 511 U.S. 825, 860 (1994); *see also Estelle,* 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.").

Generally, deliberate indifference must be demonstrated with medical expert testimony. *King v. Alexander*, 574 F. App'x 603, 606 (6th Cir. 2014). In limited circumstances, however, deliberate indifference can be established without expert testimony that delayed treatment "worsened or deteriorated" the medical condition, where an injury is readily apparent to a lay person. *Blackmore*, 390 F.3d at 899-900. In *Blackmore*, however, the plaintiff did not receive *any* medical treatment for several days. *Id.* at 896. That is not the case here. The Sixth Circuit has since made clear that the ruling in *Blackmore* is an exception to the general rule requiring medical expert proof to substantiate an Eighth Amendment medical indifference claim. *Compare Blackmore*, 390 F.3d at 899-900 (allowing medical indifference claim without medical proof where Plaintiff was in obvious distress and did not receive *any* medical treatment "within a reasonable timeframe") *with King*, 574 F. App'x at 606 (granting summary judgment to defendants for a medical indifference claim where the plaintiff received medical treatment and did not offer medical expert

6

testimony to establish a causal link between her injury and the alleged inadequacy of her treatment, and noting that even if it excused the absence of medical expert testimony, her claim still failed because her "sole evidence [was] a self-generated affidavit"), *and Santiago v. Ringle*, 734 F.3d 585, 591 (dismissing a medical indifference claim where there was no medical expert testimony because when "a claim [is] based on the prison's failure to treat a condition adequately, 'medical proof is necessary to assess whether the delay caused a serious medical injury.'" (citing *Blackmore*, 390 F.3d at 898)).

Here, Plaintiff asserts he meets both the objective and subjective prong to demonstrate deliberate indifference. First, he briefly alleges the objective component is met because he suffered a bilateral pulmonary embolism less than a week after being seen by Defendant, who (he alleges) ignored warning signs and failed to properly treat him. (Doc. 61, at 8). Within the fact section of his brief, Plaintiff states he exhibited signs and symptoms suggesting pulmonary embolism at the appointment with Defendant, and adds that there are numerous tests available that Defendant could have but failed to order. In support, he cites to the National Heart, Lung and Blood Institute (US Dept of HHS). *See id.* at 4 n. 2-3. Also in the fact section of his brief, Plaintiff alleges his blood oxygen level was 94, which he asserts is "within a borderline range", (Doc. 61, at 2-3). Second, Plaintiff does not make a specific argument as to the second subjective prong.

Plaintiff here received medical treatment, and he has not shown evidence his medical condition of pulmonary embolism was obvious to a lay person. Defendant examined him and noted Plaintiff: had no swelling in his extremities; had no fever or chills; had no respiratory distress and his lungs sounded clear; listened to Plaintiff's heart and noted it had a regular rate and rhythm; and noted his eyes, ears, nose, and throat were all normal. (Doc. 51-1, at 2). He then ordered a chest x-ray and blood tests. *Id.* Thus, even in the light most favorable to Plaintiff, considering all the

statements and complaints he made to Defendant during the appointment, there are not facts to support a claim of deliberate indifference because Plaintiff has failed to show how his treatment was insufficient or that his condition was obvious to a lay person. *See Graham ex rel. Estate of Graham v. Cty. of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) ("'[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law.'") (quoting *Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th Cir. 1976)); *see also King*, 574 F. App'x at 606 (dismissing medical indifference claims where the plaintiff did receive medical treatment, but not the specific type he requested, and there was a lack of "medical expert testimony to establish a causal link between the loss of her little finger and the alleged inadequacy of her treatment.") (citing *Santiago*, 734 F.3d at 591)).

Qualified Immunity

Defendant additionally argues he is entitled to qualified immunity. (Doc. 53, at 9-17). Plaintiff does not respond to this argument.

"Qualified immunity is 'an affirmative defense that must be pleaded by a defendant official.'" *Mingus v. Butler*, 591 F.3d 474, 479 (6th Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982)). Furthermore, "[w]hether a defendant is entitled to qualified immunity depends upon whether the plaintiff's constitutional rights were violated and whether those rights were clearly established." *Mingus*, 591 F.3d at 479. Importantly, a plaintiff has the burden of showing a defendant is not entitled to qualified immunity. *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006).

Having found no constitutional violation, it is unnecessary to analyze the applicability of qualified immunity. But, even so, the undersigned finds Plaintiff has not met his burden to show

Defendant is not entitled to qualified immunity because he failed to address this argument in his opposition. Thus, the Court finds in unnecessary to address in further detail.

Civil Rule 56(d)

Finally, Plaintiff requests this Court delay ruling on this motion pursuant to Civil Rule 56(d). (Doc. 61, at 6). The rule states:

> (d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> > (1) defer considering the motion or deny it;
> > (2) allow time to obtain affidavits or declarations or to take discovery; or
> > (3) issue any other appropriate order.

Fed R. Civ. P. 56(d).

In this instance, the Court declines to apply the discretionary rule. Generally, in the Sixth Circuit, "an affidavit that complies with Rule 56(d) is essential". *Unan v. Lyon*, 853 F.3d 279, 292 (6th Cir. 2017). The affidavit should show a party's need for particular discovery, specific facts it seeks, and explanation for its failure to previously discover the information. *Id.* at 292-93 (citing *Cacevic v. City of Hazel Park*, 226 F.3d 484, 488 (6th Cir. 2000). In certain situations, a party is not required to file a formal affidavit with its Rule 56(d) request if it has "clearly explained its need for more discovery on a particular topic". *United States v. Rohner*, 634 F. App'x 495, 504 (6th Cir. 2015). Therefore, "if a party does not satisfy Rule 56(d)'s technical requirements, he must at least affirmatively demonstrate that the discovery sought would enable him to 'adequately oppose the motion for summary judgment.'" *Id.* (quoting *Wallin v. Norman*, 317 F.3d 558, 564 (6th Cir. 2003) (citations omitted)).

Plaintiff did not attach an affidavit to his request, so the undersigned considers whether he adequately explained his need for a discovery extension. Plaintiff simply requests application of

9

Rule 56(d) because "he does not have independent means to secure a medical expert at this time []" and "[w]ithout that expert or an opportunity to depose parties, further conclusions cannot be set forth []". (Doc. 61, at 6). While the Court certainly sympathizes with Plaintiff's financial constraints, the explanation provided simply does not justify the application of Rule 56(d). He offers no explanation as to why an additional, but unspecified, amount of time would enable his procurement of an expert or what information he seeks from such expert. As such, the Court declines his request.

## CONCLUSION

Upon review of the evidence and arguments, the Court finds there are no genuine issues of material fact and Defendant is entitled to summary judgment as a matter of law. Defendant's Motion for Summary Judgment (Doc. 53) is granted and the case is dismissed with prejudice.

IT IS SO ORDERED.

s/James R. Knepp II<br>
United States Magistrate Judge